IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

CRAIG A. BEAUCHAMP,                )
                                   )
            Plaintiff,             )
                                   )     No.  CV-09-1407-HU
      v.                           )
                                   )
AGC HEAT TRANSFER, INC., a         )     OPINION & ORDER
Delaware corporation,              )
                                   )
            Defendant.             )
_____)

Elizabeth Oberlin
Attorney at Law
P.O. Box 3614
Hillsboro, Oregon 97123

      Attorney for Plaintiff

Christopher E. Hawk
GORDON & REES LLP
601 S.W. Second Avenue, Suite 2300
Portland, Oregon 97204-3159

      Attorney for Defendant

HUBEL, Magistrate Judge:

      Plaintiff Craig Beauchamp brings this employment action against his former employer AGC Heat Transfer, Inc. Defendant moves for summary judgment on plaintiff's whistleblower claim.

1 - OPINION & ORDER

All parties have consented to entry of final judgment by a Magistrate Judge in accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c). I grant the motion.

## BACKGROUND

Plaintiff began working for defendant on May 18, 2007. Approximately four months later, in September 2007, plaintiff told his immediate supervisor, Paul Juryla, that plaintiff thought defendant's meal and rest break schedule was illegal. Pltf's Depo. at pp. 52-57. Plaintiff did not bring up the meal and rest break issue with Juryla again, nor did Juryla bring up the issue with plaintiff. Id. at p. 56.

Plaintiff alleges that he discussed the meal and rest break issue with a few co-workers. Id. at pp. 52-57, 72-73. Plaintiff states that he talked about the break situation with "Brian," "Russel," and "Scott." Id. at pp. 55-56. As Juryla's assistant, "Russel" Smith was plaintiff's "second-line" supervisor. Id. at p. 86; see also Juryla Depo. at p. 30 (describing Russel Smith as a welder and second in charge when Juryla was not there). According to Smith's deposition testimony, within the first two months of plaintiff's employment plaintiff asked him if it were legal for the breaks to be timed the way they were. Smith Depo. at p. 21.

According to Brian Hoffmeister's deposition testimony, Hoffmeister stated that he assisted Juryla in creating the meal and break system that was in place while plaintiff was employed at AGC. Hoffmeister Depo. at p. 12; see also Sutherland Depo. at p. 12 (stating that Hoffmeister and Juryla created the meal and rest break system that was in place while plaintiff was employed at AGC). Hoffmeister denies that plaintiff spoke to him about the

2 - OPINION & ORDER

breaks. Id. at p. 13. Plaintiff also spoke to his wife about the meal and rest break issue. Id. at pp. 72-73.

Additionally, plaintiff contacted the Oregon Bureau of Labor and Industries (BOLI) when he was still employed with defendant, but apparently he could not attest in deposition to actually having reported a complaint about the meal and rest break policy at that time. In deposition, plaintiff stated that he contacted BOLI and spoke to them at length several times. Pltf's Depo. at p. 73. He first talked to them "sometime in the winter." Id. He contacted them because of the way he was being treated and harassed by Juryla. Id. In response to the question of whether "it," meaning the report to BOLI, had something to do with the meal and rest breaks, plaintiff responded that as far as he could tell, that's why "it," meaning harassment by Juryla, was happening. Id. However, when plaintiff was asked if he specifically told BOLI at this time that he believed the meal and rest breaks were not adequate or illegal in some way, he responded that he was not sure. Id. at p. 74. He acknowledged that he filled out no BOLI paperwork on the issue until after he had left employment with defendant. Id.

According to BOLI's records, plaintiff first contacted BOLI about his complaint on July 24, 2008, two months after his employment with defendant ended. Exh. 3 to Hawk Declr. Plaintiff did not file a formal complaint with BOLI until February 9, 2009, almost nine months after his employment with defendant ended. Exh. 4 to Hawk Declr.; see also Pltf's Depo. at pp. 72-75 (plaintiff acknowledged he did not file a complaint with BOLI, and BOLI conducted no investigation into his allegations, during his actual

3 - OPINION & ORDER

employment with defendant). Juryla did not know about plaintiff's BOLI complaint until after plaintiff voluntarily left employment with defendant. Juryla Depo. at pp. 66-67.

At no point during his employment did plaintiff tell defendant's human resources representative or plant manager of his allegations concerning the meal and rest breaks. Pltf's Depo. at pp. 52, 86; Davis Depo. at p. 15.

Plaintiff alleges that after he complained to Juryla concerning the meal and rest breaks, Juryla began retaliating against him by making his work environment hostile and unbearable. Pltf's Depo. at pp. 52-57. Because of this alleged harassment, plaintiff began to look for other employment and after one year with defendant, in May 2008, plaintiff left his position with defendant to take a job at another company.

In a declaration filed in opposition to defendant's motion, plaintiff affirmatively states that he complained during his employment about what he believed to be illegal breaks. Pltf's Declr. at ¶ 2. He further states that at the time he complained, he believed, in good faith, that defendant was breaking the law and committing a crime with respect to the break times. Id. at ¶ 3.

## STANDARDS

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence

4 - OPINION & ORDER

of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

"If the moving party meets its initial burden of showing 'the absence of a material and triable issue of fact,' 'the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense.'" <u>Intel Corp. v. Hartford Accident & Indem. Co.</u>, 952 F.2d 1551, 1558 (9th Cir. 1991) (quoting <u>Richards v. Neilsen Freight Lines</u>, 810 F.2d 898, 902 (9th Cir. 1987)). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. <u>Celotex</u>, 477 U.S. at 322-23.

The substantive law governing a claim determines whether a fact is material. <u>T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987). All reasonable doubts as to the existence of a genuine issue of fact must be resolved against the moving party. <u>Matsushita Elec. Indus. Co. v. Zenith Radio</u>, 475 U.S. 574, 587 (1986). The court should view inferences drawn from the facts in the light most favorable to the nonmoving party. <u>T.W. Elec. Serv.</u>, 809 F.2d at 630-31.

If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. <u>Id.</u>; <u>In re Agricultural Research and Tech. Group</u>, 916 F.2d 528, 534 (9th Cir. 1990); <u>California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc.</u>, 818 F.2d 1466, 1468 (9th Cir. 1987).

## DISCUSSION

Plaintiff brings the following claims: (1) a whistleblower

5 - OPINION & ORDER

claim under Oregon Revised Statute § (O.R.S.) 659A.230; and (2) a common law wrongful discharge claim. Defendant moves against the whistleblower claim.

The statute provides:

> (1) It is an unlawful employment practice for an employer to discharge, demote, suspend or in any manner discriminate or retaliate against an employee with regard to promotion, compensation or other terms, conditions or privileges of employment for the reason that the employee [1] has in good faith reported criminal activity by any person, [2] has in good faith caused a complainant's information or complaint to be filed against any person, [3] has in good faith cooperated with any law enforcement agency conducting a criminal investigation, [4] has in good faith brought a civil proceeding against an employer or [5] has testified in good faith at a civil proceeding or criminal trial.
>
> (2) For the purposes of this section, "complainant's information" and "complaint" have the meanings given those terms in ORS 131.005.
>
> (3) The remedies provided by this chapter are in addition to any common law remedy or other remedy that may be available to an employee for the conduct constituting a violation of this section.

O.R.S. 659A.230.

Additionally, the relevant Oregon Administrative Rule provides that

> ORS 659A.230 prohibits any employer with one or more employees in Oregon from discriminating or retaliating against an employee because the employee has in good faith, or the employer believes the employee has: (a) Reported to any person, orally or in writing, criminal activity by any person; (b) Reported to any person, orally or in writing, any activity the employee believed to be criminal; . . . .

Or. Admin. Rule (OAR) 839-010-0100(2).

Plaintiff relies on that portion of the statute protecting employees who have "in good faith reported criminal activity[.]" Neither the statute, nor the regulation define what is meant by "report" in the context of the required "reported criminal

6 - OPINION & ORDER

activity."

In a December 2009 decision, Judge Mosman noted inconsistent decisions by this Court on the issue of the meaning of "report." Roche v. La Cie, Ltd., No. CV-08-1180-MO, 2009 WL 4825419, at *7 (D. Or. Dec. 4, 2009). The inconsistency concerned decisions which had held that internal reporting, meaning a report of illegal conduct within an organization, was insufficient to support a claim under O.R.S. 659A.230, and decisions which had recognized a claim based on internal reports. Id. (citing Gamez-Morales v. Pacific Nw. Renal Servs, LLC, No. CV-05-546-AS, 2006 WL 2850476, at *16 (D. Or. Sept. 26, 2006) (holding that the statute required a report be made to someone other than the employer), and Darbut v. Three Cities Research, Inc., No. CV-06-62-HA, 2007 WL 496353, at *3 (D. Or. Feb. 12, 2007) (allowing a claim where the plaintiff reported the alleged criminal activity to the company's board of directors)).

Judge Mosman concluded that the distinction between internal and external reporting was not supported by the plain language of the statute. Id. After looking at that language, the title of the statute, the range of activities protected by the statute, and the statute's legislative history, he concluded that the word "report," as used in the statute, meant some action that is "intended to or likely to result" in a criminal proceeding. Id. He noted that "[a]lthough external reports are more likely to meet this criteria than are internal reports, it does not follow that an internal report is necessarily unprotected." Id. Instead, the analysis should focus on whether, under the specific facts of the case, the plaintiff's report was intended to, or likely to, result in a

7 - OPINION & ORDER

criminal proceeding. Id.[1] I am persuaded by Judge Mosman's reasoning and I adopt his analysis.

Under this standard, defendant argues that plaintiff's actions are insufficient to show that he engaged in the required protected activity. Defendant notes that plaintiff's allegations of wage and hour violations are civil in nature. However, accepting plaintiff's statements that he believed that defendant was breaking the law and committing a crime with respect to the meal and break times, defendant argues that plaintiff's single report to Juryla did not, as a matter of law, further the statutory goal of initiating a criminal proceeding. A single complaint to a supervisor within the company cannot, argues defendant, be viewed as a complaint intended to, or likely to, result in a criminal proceeding against defendant.

Defendant further points to the fact that plaintiff never

---

[1] It appears that in announcing his analysis of the verb "report" in the part of the statute protecting reports of criminal activity, Judge Mosman inadvertently included the words "civil proceeding" in addition to a "criminal proceeding." Roche, 2009 WL 4825419, at * 7 ("the protected activity analysis should focus on whether, under the specific facts of the case, the complaint's 'report' is intended to or likely to result in a criminal or civil proceeding"). It is clear from reading Judge Mosman's entire opinion that his analysis here is focused only on the type of "reporting" required to satisfy the statutory requirement of reports of criminal activity. Additionally, later in his opinion he expressly stated that "[w]here a person has not filed a formal complaint or cooperated with an investigation or legal proceeding, the whistleblower statute protects only reports of 'criminal activity.'" Id. at *7. Notably, he also rejected the plaintiff's reports of human resources-type issues which would have subjected the defendant only to civil liability, as the type of "report" triggering protection under the statute. Thus, I read his opinion to set forth an analysis examining whether the plaintiff's report was intended to, or likely to, result in a criminal proceeding.

8 - OPINION & ORDER

attempted to contact senior management, law enforcement, or any government agency about his meal and break allegations, and he did not ask anyone with defendant to investigate his complaint.

In response, plaintiff states that in addition to complaining to Juryla, plaintiff discussed his concerns with Smith, the second in charge supervisor. And, he spoke to two other co-workers.

Plaintiff also notes that he made several telephone calls to BOLI while he was still employed by defendant.[2] But, as discussed above, the deposition testimony he submits in opposition to the motion fails to establish that at that time he specifically complained about what he perceived to be illegal breaks.

Plaintiff relies on Darbut, 2007 WL 496353. In that case, there was no question that criminal activity was the subject of the plaintiff's report. The issue was whether reports of possible criminal activity to the defendants' boards of directors was protected conduct. The plaintiff had not initiated any formal report of improper conduct to the IRS until after the plaintiff's employment had been terminated. Id. at *2. The defendants argued that reports to supervisors and to boards of directors were not sufficient because they were internal. Id.

Judge Haggerty noted previous decisions from this district holding that (1) generally, disagreement between managers over a debatable matter of internal policy was not protected; (2) conversations between employees and comments to supervisors may

---

[2] As noted earlier, BOLI's records show plaintiff's first contact with the agency was two months after he left employment with defendant, in July 2008. For the purposes of this motion, however, I accept plaintiff's testimony that his initial contact with BOLI was while he was still employed.

9 - OPINION & ORDER

fail to meet the requisite standard because the statute was not meant to protect persons who discuss an incident with those people who were witnesses to the incident themselves; but that (3) reports of wrongdoing to a supervisor can be protected if made to a person in a supervisory position other than the wrongdoer himself. Id.

Plaintiff argues that under Darbut, a report to an external agency like the IRS is not required to be considered a "protected" report under the whistleblower statute. While I agree with plaintiff about the holding in Darbut, as I explained above, I adopt Judge Mosman's analysis which recognizes that internal reports may suffice as protected activity, but only when the plaintiff's report can be said to have been intended to, or likely to, result in a criminal proceeding.

I agree with defendant that the facts in this case are insufficient as a matter of law to support a claim. The facts, taken in a light most favorable to plaintiff, show that he (1) made a single complaint to his supervisor, who created the allegedly illegal break and meal policy; (2) made a single complaint to the second in command who helped enforce the meal and break policy; (3) made a couple of comments about the policy to coworkers; and (4) complained to his wife.

Under the applicable analysis, and the relevant cases in this district, these acts do not reasonably suggest that plaintiff intended a criminal proceeding to result, or even thought a criminal proceeding likely to result, as a result of his conduct. Additionally, although plaintiff made a couple of calls to BOLI to admittedly complain about alleged harassing behavior, he concedes that the record does not show that he actually reported what he

10 - OPINION & ORDER

believed to be an illegal meal and break policy during his employment. Thus, his calls to the agency cannot be viewed as calculated to result in a criminal proceeding.

## CONCLUSION

Defendant's motion for partial summary judgment [18] on plaintiff's statutory whistleblower claim, is granted.

IT IS SO ORDERED.

Dated this <u>8th</u> day of <u>November</u>, 2010.


<u>  /s/ Dennis James Hubel  </u>
Dennis James Hubel
United States Magistrate Judge

11 - OPINION & ORDER